BUCKSPORT & BANGOR RAILROAD COMPANY *vs.* JOSEPH L. BUCK.

Hancock, 1875.—April 13, 1876.

*Corporations. Railroad.*

It is not necessary to fix the capital stock to enable a corporation to maintain an action on the subscription agreement.

The Penobscot and Union River Railroad Company was chartered March 1, 1870, the capital stock to consist of not less than $100,000, nor more than $1,200,000: the route to be from Bangor to Bucksport, and thence to Ellsworth, (40 miles.) The corporators accepted the charter, chose directors among whom was the defendant who was afterwards chosen president and authorized to purchase land and issue scrip therefor. The defendant with others signed a subscription book in substance this: "We the subscribers bind ourselves to pay the sum written against our names, as called for by the treasurer hereafter to be elected, same being part of the capital stock, for the purpose of constructing a railroad from Bucksport to Bangor (18 miles,) said road to be built under the provisions of a charter entitled," &c. "No subscription shall be binding until the sum of $100,000 shall have been subscribed by good and responsible parties. Bucksport, August 25, 1871." The defendant subscribed $15,000; the aggregate subscription including that of the town of Bucksport amounted to $234,500. At a directors' meeting, the defendant being present, voted that the subscription of Fred Spofford, J. L. Buck, (the defendant,) and others to the capital stock of this railroad be accepted upon the conditions therein stated. The road was built from Bucksport to Bangor. In a suit by the company against the de-

fendant for his subscription, *held*, that the action was maintainable, that the defendant's liability did not depend upon the number of shares or upon any specific and fixed capital, but upon the terms of his agreement.

ON REPORT.

ASSUMPSIT, brought on a paper signed by the defendant which will be found stated in the opinion at length. After the evidence was out, the case was made law on report. If, in the opinion of the court, the action was not maintainable, a nonsuit was to be ordered, otherwise, the action to stand for trial. The facts, sufficient to raise the legal questions, appear in the opinion.

*E. Hale, L. A. Emery & T. C. Woodman*, for the plaintiffs.

*J. Baker, A. Wiswell & A. P. Wiswell*, for the defendant.

APPLETON, C. J. The Penobscot & Union River Railroad Company was chartered March 1, 1870, c. 395, of the special acts of that year. The route was to be from Bangor to Bucksport, and thence to Ellsworth, the distance being forty miles.

By § 2, it was provided that the capital stock should consist "of not less than one thousand nor more than twelve thousand shares of one hundred dollars each."

On April 28, 1870, in pursuance of notice duly given, a meeting of the corporators was had, the charter accepted and directors chosen, among whom was the defendant.

On September 13, 1870, at a meeting of the directors the defendant was chosen president and empowered to purchase land and issue scrip therefor.

On August 25, 1871, the defendant with others signed a subscription book which is in these words.

"We, the subscribers hereunto, for and in consideration of one dollar to each of us in hand paid, the receipt whereof we do hereby acknowledge, and for other considerations, do hereby bind ourselves and our heirs to pay the sum written against our names, as called for by the treasurer hereafter to be elected, same being part of the capital stock, for the purpose of constructing a railroad from Bucksport to Bangor, or such point in Brewer, opposite Bangor, as may be deemed expedient; said road to be built under

the provisions of a charter entitled 'the Penobscot & Union River Railroad Company,' either in the present form, or as it may be amended by the legislature of this state; such alteration, if any, to be in accordance with the vote of a majority of the board of directors, legally chosen by the stockholders of the road. No subscription shall be binding until the sum of one hundred thousand dollars shall have been subscribed by good and responsible parties, and no subscriber shall be bound for any further sum than that written by himself when making his subscription.

It is understood that the capital stock of the contemplated railroad shall be three hundred thousand dollars (300,000.) It is further understood, that so soon as one hundred thousand dollars shall have been subscribed, said stockholders shall choose a board of seven directors, each share of one hundred dollars being entitled to one vote, and said directors as soon as practicable, thereafter shall choose a president and also a treasurer. Bucksport, August 25, 1871."

The defendant subscribed for the sum of fifteen thousand dollars.

At a meeting of the directors, on September 19, 1871, the defendant being present, a subscription book was presented signed by the defendant and others to the capital stock of that portion of the road between Bucksport and Bangor. At this meeting it was voted: "That the subscription of Fred Spofford, J. L. Buck, (the defendant,) R. P. Buck, J. E. Gowen and others to the capital stock of this railroad be accepted upon the conditions therein stated."

It was further "voted, that the books of the company be opened for subscriptions to the capital stock of this company, (upon the same conditions as those already made,) at the custom house, Ellsworth; Second National Bank, Bangor; Bucksport National Bank, Bucksport, from the 2d to the 8th of October next."

"Voted, that the clerk cause notice of the opening of the books for subscription, in accordance with the foregoing vote, to be published in the Ellsworth American, and in the Bangor Whig and Courier."

The clerk was directed to call a meeting of the subscribers to

the capital stock at the town house in Bucksport on the 10th day of October next—which was two days after the time limited for subscriptions which expired on October 8.

At the meeting on October 10, more than a thousand shares had been subscribed and the time within which subscriptions were to be received had expired. It may be presumed that the road from Bucksport to Bangor was deemed of the first importance, inasmuch as the subscriptions were limited to that portion of the road and the plaintiff corporation assessed the subscriptions with the conditions therein expressed. After electing the defendant and others as directors, they were authorized by vote to contract immediately for the construction of said road from Bucksport to Bangor and to issue mortgage bonds of the corporation to an amount not exceeding twenty thousand dollars a mile, &c.

The capital stock, then, on October 10, was the amount subscribed at that date. The opening of subscriptions and the time within which they were to be made had expired. The meeting was of "the subscribers to the capital stock." They took then no measures for further subscriptions, but proceeded to issue bonds and to direct the contracting of the railroad. In the *Lexington & West Cambridge R. R. Company* v. *Chandler*, 13 Metc., 311, it was held that the vote of the directors to close the subscription book for shares at the number then subscribed for, on a given time, was in effect a vote fixing the number of shares at the number then subscribed for, as ascertained by the books, and that it fixed the number lawfully for the time being. So here, the limiting of the time of subscription, the returning of the subscription book, the acceptance of the subscription, and the action of the corporation may be regarded as fixing the number of the shares for the time being.

Nor can this defendant complain. His subscription was not to be "binding until the sum of one hundred thousand dollars shall have been subscribed by good and responsible parties." The necessary implication from the language is that it was to be binding when that amount should be obtained. It was obtained and the subscription by its terms became "binding." If binding, its payment can be enforced.

The clause in the subscription "that it is understood that the capital stock of the contemplated railroad shall be three hundred thousand dollars," was not a condition precedent, without the obtaining of which the defendant was not to be liable. His liability, according to the terms of his subscription, accrued when the hundred thousand dollars should be obtained. It was the intention of the subscribers, undoubtedly, that the work to Bangor should commence when one hundred thousand dollars should be subscribed, with the expectation, however, that the further sum mentioned would be obtained, but the obtaining of such sum was not made a condition precedent.

The number of shares by the act was from one thousand to twelve thousand. If more than one thousand was required the number might be enlarged. The subscription limited the liability of the subscribers to one hundred dollars a share. "The security of the subscribers," observes Shaw, C. J., in the case already cited, "is in the provision limiting the amount to which he may be assessed. The security for the enterprise is found in the provision authorizing the directors to enlarge and fix the number of shares so as to finish the capital required to complete the work and expressly authorizing and requiring them to proceed when two hundred and fifty shares are subscribed. Of course each subscriber, when he subscribes, knows that he will be liable to assessment when the number is taken, and in subscribing assents to the terms." Here the required number and more was taken. "The subscribers for stock," observes Shepley, C. J., in *Kennebec & Portland R. R. Co.* v. *Jarvis*, 34 Maine, 360, 364, "must have known, when their subscriptions were made, that the amount of capital then provided for was subject to enlargement or diminution by a vote of the corporation. The contract of a subscriber to the stock cannot, therefore, be considered as made upon condition that the corporation should have a certain number of shares or a fixed capital. Such a construction would deprive the corporation of the power to alter that by-law without a violation of its contracts with the stockholders. This could not have been the intention of the parties. The agreement provided for payment of the amount of the shares without any reference to a fixed capital, or to any number of shares

or to any assessment to be made on other shares." The reasoning of the court in that case is precisely applicable to the one under consideration. It follows, that so far as the defendant is concerned, as a subscriber, under his contract, his liability does not depend upon the number of shares or upon any specific and fixed capital, but upon the terms of his agreement.

The defendant and others by their contract promised "to pay the sum set against" their "(our) names as called for by the treasurer hereafter to be elected." The contract is like that in 34 Maine, 363, in reference to which Shepley, C. J. says, "The promise is not to pay all 'legal assessments.' It is to pay for the shares as he should be required by a vote of the company without any reference to assessments or payments to be made on other shares." The defendant and others were liable to the extent of their subscription, and their liability would not be enlarged by the increase of subscribers, while such increase might be indispensable to the success of the enterprise. It seems well settled that it is not necessary to fix the capital stock to enable a corporation to maintain an action on the subscription agreement. *Penobscot & Kennebec R. R. Co.* v. *Dunn,* 39 Maine, 587. *Kennebec & Portland R. R. Co.* v. *Jarvis,* 34 Maine, 360. *Penobscot R. R. Co.* v. *Dummer,* 40 Maine, 172. *Penobscot & Kennebec R. R. Co.* v. *Bartlett,* 12 Gray, 244. *City Hotel* v. *Dickinson,* 6 Gray, 586.

It should be remembered this is an action on the defendant's contract. It is not a proceeding under the statute as were the cases of the *Somerset & Kennebec R. R. Co.* v. *Cushing,* 45 Maine, 524, 530, and the *Somerset R. R. Co.* v. *Clark,* 61 Maine, 380. The distinction is taken in all the cases cited between proceedings under the statute to enforce the payment of the balance remaining due after a sale of shares for non-payment of assessments and suits upon the promise of a party.

It is further to be observed that the subscription paper in terms states that this amount is only "part of the capital stock;" so that the promise to pay does not require the whole capital to be subscribed, but only the specific sum of one hundred thousand dollars, which being subscribed, the promise to pay attaches. *Athol Music Hall Co.* v. *Carey,* 116 Mass., 471.

By the act of February 1, 1873, c. 232, the name of the Penobscot & Union River R. R. Co., was changed to that of the Bucksport & Bangor R. R. Co., and this change was accepted at a legal meeting of the stockholders.

The defendant's promise was not binding until a subscription for one hundred thousand dollars should be obtained. It was binding when obtained. The assessments were upon the amount of one hundred thousand dollars. That they were made upon an increased amount was no injury to the defendant. His liability was not thereby increased. The additional subscribers were needed for the success of the enterprise. The defendant was a director and president of the corporation. Contracts were made upon the strength of the promise of the defendant and others. The road has been completed. The defendant has promised to pay and no sufficient reason is shown why he should be absolved from the performance of his promise.                *The action to stand for trial.*

DICKERSON, DANFORTH, VIRGIN and PETERS, JJ., concurred.

LIBBEY, J., having been of counsel, did not sit.